Filed 12/11/13  P. v. Boyd CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GARY BOYD,<br><br>    Defendant and Appellant. | H038058<br>(Monterey County<br>Super. Ct. No. SS111821) |

At approximately 10:30 p.m. on September 15, 2011, defendant Gary Boyd was detained along with four other individuals by Salinas police officers performing an enforcement "sweep" in a high crime area of Salinas.  The detentions were based upon the suspicion that defendant and the others had committed a trespass under a city ordinance prohibiting persons from entering another's land when the owner has posted a sign indicating the land is private property.  After refusing to be patsearched and then attempting to flee the officers, defendant was arrested and found to be in possession of a loaded firearm.  He was charged by complaint with one misdemeanor and four felonies, including being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)).[1] The complaint included various special allegations, including a gang enhancement as to

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

three of the felony counts. On November 18, 2011, after a hearing on defendant's motion to suppress pursuant to section 1538.5 that was combined with the preliminary hearing, the magistrate denied the suppression motion and held defendant to answer.

An information was filed shortly thereafter containing the same counts and enhancements alleged in the complaint. On January 5, 2012, defendant (against his counsel's advice) pleaded no contest to being a felon in possession of a firearm and admitted the gang allegation on the conditions that the remaining counts and allegations would be dismissed, he would be placed on felony probation, and he would receive a five-year suspended sentence. The court thereafter imposed a five-year prison term, suspended execution of the sentence, and placed defendant on probation on condition that he serve 240 days in county jail. Appellant filed a timely notice of appeal from the order, challenging the magistrate's denial of the suppression motion.[2]

On appeal, defendant contends he received prejudicially ineffective assistance of counsel. He asserts that his counsel failed to renew the motion to suppress in superior court after its denial by a magistrate and after the information was filed, thereby failing to preserve defendant's appellate challenge to the legality of his detention by the police that ultimately resulted in his arrest. He argues the motion to suppress was meritorious, there was no tactical reason for his counsel's failure to renew it, and he is therefore entitled to appellate relief.

We reject defendant's ineffective assistance of counsel claim. Accordingly, we will affirm the order of probation.

---

[2] Details concerning defendant's subsequent filing of an amended notice of appeal and procedural aspects of the case related thereto are discussed in part IV of the Procedural and Factual Background, *post.*

PROCEDURAL AND FACTUAL BACKGROUND[3]

I       *Complaint*

Defendant was charged by a complaint filed September 26, 2011, with four felonies and one misdemeanor, including three felony weapons possession offenses, arising from an incident on September 15, 2011.  The complaint included various special allegations, including gang allegations as to each of the weapons possession offenses.

II.      *Motion to Suppress*

A.       *Contentions*

Defendant filed a motion to suppress evidence pursuant to section 1538.5, arguing that the property seized by the police (i.e., the handgun) and statements made by defendant should be suppressed because they were products of an unlawful search and seizure.  He argued, among other things, that (1) his initial detention was unlawful unless it was based upon facts supporting a reasonable suspicion of illegal activity; and (2) even were the detention lawful, there was no lawful basis for the officer's performance of a patsearch unless he was aware of specific and articulable facts (together with reasonable inferences drawn therefrom) to support a reasonable suspicion that defendant was armed and dangerous.

The motion was opposed by the People.  Their brief consisted of a general narrative of search and seizure jurisprudence without any argument applying the law to the facts of this case.

---

[3] The facts relevant to the challenged search and seizure are taken from the evidentiary hearing before the magistrate on defendant's motion to suppress.  "Since the trial court resolved this matter in favor of the prosecution, for purposes of this proceeding we view the record in the light most favorable to the People's position."  (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 780.)

3

B.   *Evidence*

An evidentiary hearing was held on November 18, 2011.  The evidence presented at the hearing consisted of the testimony of three witnesses, as presented below.[4]

Salinas Police Officer Steven Mattocks was patrolling the area of Soledad Street in Salinas at 10:22 p.m. on September 15, 2011.  The area is a high crime area referred to as "Chinatown" and is "notorious with drug sales, prostitution, gangs, basic violence, stuff like that."  He and approximately 10 other officers were sent to the area to perform "a Chinatown sweep," which he defined as "enforc[ing] laws down there."  At that time, there were no businesses open in the area being patrolled.  Two businesses, Dorothy's Kitchen, a homeless shelter, and Victory Outreach, had closed at approximately 10:00 p.m.

There were approximately 50 people on the street that Officer Mattocks was patrolling.  The officer observed defendant and four other individuals "standing underneath a 'No Trespassing' sign" posted at 36 Soledad Street.  Officer Mattocks further testified that defendant "was standing on the sidewalk, near the door well, with a group."  He observed defendant standing on the sidewalk for approximately 40 seconds. He contacted the five people because they were violating a local trespassing law, Salinas Municipal Code 21-35 (SMC 21-35).

Officer Mattocks instructed defendant and the others to sit on the curb, telling them they had violated a local ordinance concerning loitering.  He did so with the intention of determining the identities of the individuals and possibly issuing citations to them for violating SMC 21-35.  The officer began to obtain identifications from the five individuals and to run records checks on each person.  Defendant was farthest away from

---

[4] A fourth witness, Officer Michael Cupak, testified at the combined preliminary hearing and hearing on the suppression motion.  His testimony concerned the allegations that the charged crimes were committed for the benefit of a criminal street gang.  That testimony is not relevant to the motion to suppress.

Officer Mattocks. While the officer was running records checks, he noticed that defendant "was continually scooting farther away from the rest of the individuals"; Officer Mattocks instructed defendant to stop moving. Officer Mattocks testified that defendant stood out from the rest of the group because he was "cleanly dressed," wearing a Pendleton, blue jeans and a black hooded sweater, while the people who seek the services of Dorothy's Kitchen were "poorly dressed, with tattered clothes." The officer viewed defendant as being "out of the norm, obviously not homeless, and dressed basically like our normal drug dealers do down in Chinatown."

Sergeant Nuuy Livingston of the Salinas Police Department came to the scene and assisted Officer Mattocks with interviewing the five detained individuals. Sergeant Livingston contacted defendant, who was the person farthest away from Officer Mattocks. He asked defendant to identify himself, and he responded that he was Gary Boyd. Sergeant Livingston told defendant that he wanted to perform a patsearch for weapons and asked him to stand.[5] Defendant responded that Sergeant Livingston did not have the right to patsearch him and refused to stand up. Sergeant Livingston repeated that he was going to conduct a patsearch, and defendant reiterated that he felt that the sergeant had no right to do so. Officer Mattocks came over to assist, and as Sergeant Livingston helped defendant get up from the curb, defendant "tried to run away from [his] grasp." Sergeant Livingston "had ahold of [defendant's] right arm and assisted him to the ground."

Defendant was handcuffed by another officer and was escorted to a patrol car. An officer assisting Sergeant Livingston and Officer Mattocks searched defendant and found a loaded nine-millimeter handgun in a satchel concealed under his sweater.

---

[5] Sergeant Livingston testified that he decided to patsearch defendant for weapons because there were five detained individuals, they were in a high crime area, and defendant was wearing an oversized sweatshirt in which a person could conceal weapons.

None of the five people detained by Officer Mattocks was cited for trespassing. Sergeant Livingston testified that it was "at [the] discretion" of the officer whether or not to issue a citation for trespassing.

Nelson Rodriguez, an investigator with the Monterey County Public Defender's Office, testified that three days before the hearing, he visited and photographed the Soledad Street area where defendant had been detained and arrested. At that time (two months after defendant's detention and arrest), there was no sign indicating "No Trespassing" at 36 Soledad Street. Officer Mattocks testified the sign was there on September 15, 2011. He testified further it was noted on the sign, " 'No Trespassing' " and there was a reference to SMC 21-35. Officer Mattocks did not recall any other particulars that may have been indicated on the sign.

C.    *Order*

On November 18, 2011, after the presentation of evidence at the hearing on the motion to suppress combined with the preliminary hearing, the magistrate denied the suppression motion. He gave two separate reasons for denial: (1) the detention was lawful based upon the reasonable suspicion that defendant had committed a trespass in violation of SMC 21-35; and (2) there was "probable cause to detain [defendant]" because it was after 10:00 p.m., it was a high crime area, no businesses were open, and defendant stood out "in a way that [was] consistent with, in the officer's experience, only one other type of person [who] goes there, [a] drug dealer[], and [defendant] looks like one." The court ordered defendant to be held to answer to the four felonies and enhancements in the superior court, and certified the misdemeanor to the superior court.

III.    *The Information, Plea, and Sentencing*

On November 21, 2011, an information was filed alleging the four felonies and one misdemeanor previously alleged in the complaint, namely, being a felon in possession of a firearm (§ 12021, subd. (a)(1); count 1); carrying a concealed firearm (§ 12025, subd. (a)(2); count 2); carrying a loaded firearm (§ 12031, subd. (a)(2); count

6

3); street terrorism (§ 186.22, subd. (a); count 4); and misdemeanor resisting arrest (§ 148, subd. (a)(1); count 5). The information contained a number of special allegations. It was alleged as to counts 1 through 3 that defendant had been previously convicted of transportation of a controlled substance for sale (Health & Saf. Code, § 11352, subd. (a)); as to counts 2 and 3, that defendant was not the registered owner of the firearm (§ 12025, subd. (b)(6)); as to counts 1 through 3, that such crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)); and as to the four felony counts, that defendant had suffered a prior felony conviction for which he had served a prison term (§ 667.5, subd. (b)).

At a pretrial conference on January 4, 2012, defendant withdrew his not guilty plea, entered a conditional plea of no contest to count 1, and admitted the gang allegation as to that count. Defendant's plea was conditioned upon the dismissal of the remaining counts and allegations and his receiving felony probation and a suspended five-year sentence. Defendant entered this plea over the objection of his counsel. The court thereafter entered a five-year prison sentence, suspended execution of that sentence, and granted defendant probation for three years on various terms and conditions, including the condition that he serve 240 days in county jail with the court awarding him a total of 174 days of presentence credits.

IV.    *Appeal*

Defendant filed a timely notice of appeal in which his counsel indicated that the appeal was based upon the denial of the motion to suppress evidence under section 1538.5.[6]

---

[6] Defendant also indicated in the notice of appeal that he would seek review of an order increasing the amount of his bail. That issue is not addressed in defendant's appellate briefs and is therefore not a subject of this appeal.

Defendant thereafter filed with this court a motion for relief from default for failing to timely file an amended notice of appeal to raise an ineffective assistance of counsel claim. We granted the motion, specifying that the amended notice of appeal be filed with the superior court within 10 days of our order and that it include a request to the trial court for a certificate of probable cause.

In compliance with our order, on July 6, 2012, defendant filed an amended notice of appeal, which included a request for the superior court to issue a certificate of probable cause for him to assert an ineffective assistance of counsel claim based upon the failure to renew the motion to suppress in the superior court. After the superior court's denial of this request, defendant filed a petition for writ of mandate seeking an order directing the superior court to issue a probable cause certificate. (*Boyd v. Superior Court*, H038937.)[7] We denied the petition.

The Supreme Court granted defendant's petition for review and transferred the matter to this court with directions that we vacate our order denying mandate and issue an alternative writ. (*Boyd v. Superior Court*, S206766, Jan. 16, 2013.) On January 28, 2013, we vacated our prior order denying mandate; we issued an alternative writ of mandate commanding the superior court to vacate its prior order denying the request for a certificate of probable cause and issuing a new order granting such request, or, instead, show cause why a peremptory writ of mandate should not issue. On January 30, 2013, the superior court vacated its prior order and entered a new order granting defendant's request for issuance of a certificate of probable cause. We thereafter ordered the

---

[7] We take judicial notice of our file in the related writ of mandamus proceeding, pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a), because it "help[s] complete the context of this case." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2)

alternative writ of mandate discharged and denied the petition for writ of mandate as moot.

## DISCUSSION

I.    *Defendant's Ineffective Assistance of Counsel Claim*

    A.    *Ineffective Assistance of Counsel Claims*

A criminal defendant has the right to the assistance of counsel.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.)  This constitutional right to counsel entitles a defendant not simply to "bare assistance" but rather to effective assistance.  (*People v. Jones* (1991) 53 Cal.3d 1115, 1134.)  There are two elements to an ineffective assistance claim: (1) deficient performance, and (2) prejudice resulting from such deficient performance.  (*People v. Weaver* (2001) 26 Cal.4th 876, 961.)  The deficient performance element consists of "a showing that 'counsel's representation fell below an objective standard of reasonableness.' [Citations.]"  (*In re Marquez* (1992) 1 Cal.4th 584, 602-603, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 688.)  " 'In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny . . .' and must 'view and assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act.' [Citation.]"  (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)  Moreover, "[i]f the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation."  (*Ibid.*)  To satisfy the second element of "prejudice," the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to defendant, i.e., a probability sufficient to undermine confidence in the outcome."  (*In re Ross* (1995) 10 Cal.4th 184, 201.)

The burden of establishing ineffective assistance is upon the party claiming it. (*People v. Pope* (1979) 23 Cal.3d 412, 425 (*Pope*), overruled on another ground, *People*

*v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)  This means that defendant here "must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to [the] defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'  [Citations.] "  (*People v. Kipp* (1998) 18 Cal.4th 349, 366, quoting *Strickland*, *supra*, 466 U.S. at p. 686.)

Furthermore, in deciding an ineffective assistance claim, the reviewing court need not inquire into the two components (deficient performance and prejudice) in any particular order; in the event the defendant's showing on one component is insufficient, the court need not address the remaining component.  (*In re Cox* (2003) 30 Cal.4th 974, 1019-1020.)  "The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (*Strickland, supra,* 466 U.S. at p. 697.)

B.      *Contentions of the Parties*

Defendant contends that he was deprived of effective assistance of counsel because his attorney failed to preserve his Fourth Amendment challenge by filing in the superior court a renewed motion to suppress under section 1538.5.  He contends that the suppression motion, had it been renewed—based upon the record established before the magistrate—was a meritorious one that should have been granted.  In this respect, he argues that Officer Mattocks had no reasonable suspicion to justify detaining him. Defendant asserts that the officer had no reasonable basis to conclude that he had committed a trespass in violation of SMC 21-35, because (1) he was standing on a public sidewalk and thus not trespassing on private land; (2) even assuming he was on private property, it had not been established that the posted sign to which the officer testified contained the language required under the ordinance; and (3) it was not established that

the sign existed at the time defendant was detained. Defendant asserts further that the second ground upon which the magistrate found the detention to have been lawful—that defendant was in a high crime area, at approximately 10:30 p.m. and was dressed different from those who were typically found in the area—did not satisfy the constitutional standard for a lawful detention. In other words, these circumstances were insufficient to support a reasonable belief by the officer that "(1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893, superseded on other grounds by Cal. Const., art. I, § 28.)

Defendant acknowledges that it was essential for him to have renewed his suppression motion in superior court after its denial by the magistrate in order to preserve the issue of the legality of the search on appeal. He asserts, however, that such omission was deficient performance by his attorney that constituted "per se" ineffective assistance of counsel, entitling him to appellate relief because his motion to suppress was meritorious.

The Attorney General responds that defendant's ineffective assistance claim fails because the record demonstrates that his motion to suppress was not meritorious. She asserts that there were sufficient facts for Officer Mattocks to have had a reasonable suspicion that defendant had committed a trespass in violation of SMC 21-35.[8] Therefore, the Attorney General contends, defense counsel's failure to renew in the superior court a suppression motion that was without merit did not constitute ineffective assistance of counsel.

---

[8] The Attorney General specifically declined to argue that the magistrate's second, alternative basis for denying the suppression motion was a constitutionally sufficient basis for Officer Mattocks's detention of defendant.

11

## C.    *Defendant's Claim of Error Fails*

In order for a criminal defendant to obtain appellate review of a search and seizure question, he or she must have "moved for the return of the property or the suppression of the evidence" "at some stage of the proceedings prior to the conviction." (§ 1538.5, subd. (m).)  In *People v. Lilienthal* (1978) 22 Cal.3d 891 (*Lilienthal*), our high court "concluded this condition was not satisfied simply because the defendant moved to suppress evidence at the preliminary examination, even though the preliminary examination might otherwise appear to be 'some stage of the proceedings prior to conviction.' [Citation.]" (*People v. Richardson* (2007) 156 Cal.App.4th 574, 582-583 (*Richardson*), citing *Lilienthal*, at pp. 895-897.)  Rather, the search and seizure issue must "be raised in the superior court to preserve the point for review on appeal." (*Lilienthal*, at p. 896.)

"Because preliminary examinations were traditionally conducted by municipal court judges sitting as magistrates, the elimination of the municipal court raised the idea that the basis for the *Lilienthal* rule had disappeared along with the municipal court." (*Richardson*, *supra*, 156 Cal.App.4th at p. 586.)  This argument was rejected in several cases.  (See *People v. Garrido* (2005) 127 Cal.App.4th 359, 364; *People v. Hinds* (2003) 108 Cal.App.4th 897, 900 (*Hinds*); *People v. Hoffman* (2001) 88 Cal.App.4th 1, 3; *People v. Hart* (1999) 74 Cal.App.4th 479, 485-486 (*Hart*).)  It is therefore clear that a search and seizure challenge is not preserved for appeal if the defendant fails to renew in the superior court a suppression motion after it has been denied by the magistrate. (*Richardson*, at pp. 586-587; see also *People v. Witcraft* (2011) 201 Cal.App.4th 659, 665-666.)

Here, after the magistrate denied the motion and bound defendant over to the superior court, defense counsel did not renew the motion to suppress.  He therefore may not directly assert that his suppression motion should have been granted, since the claim was forfeited.  (*Richardson*, *supra*, 156 Cal.App.4th at pp. 586-587.)  But his trial

attorney's failure to renew the motion under the circumstances—contrary to defendant's claim—does not establish "per se" ineffective assistance of counsel entitling him to appellate relief.

In support of his position, defendant relies on *Hart*, *supra*, 74 Cal.App.4th 479. There, after the magistrate denied the defendant's motion to suppress, the case went to trial and a jury convicted the defendant of possession of a controlled substance. (*Id.* at pp. 483-484.) The defendant failed to renew the motion to suppress in the superior court (*id.* at p. 484), and a majority panel of the Third District Court of Appeal concluded that this omission constituted a failure to preserve the Fourth Amendment challenge (*id.* at pp. 485-486). But because the defendant asserted that the failure to renew the suppression motion was ineffective assistance of counsel, the appellate court reviewed the merits of the defendant's challenge of the search: "[W]e conclude it is necessary to determine the legality of the search in order to determine whether counsel was constitutionally ineffective. If the search was invalid, failing to preserve the issue constituted deficient performance when measured against the standard of a reasonably competent attorney. [Citation.] Furthermore, the failure to preserve the issue of the legality of the search is prejudicial to the defendant if there would not have been sufficient evidence, otherwise, to convict. [Citation.] Hence, to determine whether counsel was constitutionally ineffective for failing to preserve the issue, we must consider the merits of the Fourth Amendment argument. *Lilienthal* therefore is neutered." (*Id.* at pp. 486-487.) The *Hart* court ultimately rejected the defendant's ineffective assistance claim, finding that the challenged search to have been lawful. (*Id.* at pp. 487-493.)

*Hart* is distinguishable. In this case, shortly after the magistrate denied the suppression motion and bound defendant over to superior court, defendant—without renewing the motion to suppress—pleaded no contest in exchange for receiving a five-year prison sentence for which the court would stay execution of his prison sentence. At

the time of the plea, defendant acknowledged that the maximum sentence he could have received had he been convicted after trial was seven years in prison. Thus, in contrast to *Hart*, defendant here entered a negotiated plea rather than having sustained a conviction after trial. This procedural distinction is of significance.

As noted above, where the record does not demonstrate the reason counsel took certain action or failed to take certain action, an appellate court must reject the defendant's ineffective assistance of counsel claim "unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott*, *supra*, 15 Cal.4th at p. 1212.) Our high court has explained: "[B]ecause, in general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

Here, the record is devoid of any reason or reasons defense counsel may have elected not to renew a suppression motion in superior court. She may have intended to file the motion, but her client's decision to enter into a negotiated plea may have preempted such action. Or the negotiated plea itself—although silent on the subject of defendant's challenge to the search and seizure—may have been based upon defendant's forgoing such challenge. These two scenarios, while matters of speculation on the part of this court, are only two examples of explanations for not renewing the suppression motion that would undercut defendant's ineffective assistance of counsel claim. The point is that this is not a case in which either counsel was asked for and failed to provide a satisfactory explanation for the omission, or "there simply can be no satisfactory explanation." (*People v. Scott*, *supra*, 15 Cal.4th at p. 1212.)

*Hinds*, *supra*, 108 Cal.App.4th 897, another decision of the Third District Court of Appeal, supports our conclusion. There, after the magistrate's denial of his motion to suppress, the defendant pleaded guilty to marijuana possession pursuant to a negotiated plea without renewing the suppression motion in the superior court. (*Id.* at p. 899.) The defendant acknowledged that under *Lilienthal*, *supra*, 22 Cal.3d at pages 896 to 897, the challenge was not preserved for appeal as a result of the failure to renew the motion in superior court; but he argued that, under *Hart*, *supra*, 74 Cal.App.4th 479, the search issue was cognizable based upon his ineffective assistance of counsel claim and that he was necessarily entitled to appellate relief because the suppression motion had merit. (*Hinds*, at pp. 900-901.)

The court in *Hinds*, distinguishing its prior decision in *Hart*, rejected the defendant's position: "[The d]efendant argues we must necessarily consider the merits of his suppression motion on appeal in order to determine whether he received effective assistance of trial counsel. Relying on *Hart*, defendant presumes there can be no tactical reason not to renew the suppression motion and that, if counsel fails to preserve a potentially meritorious motion for review on appeal, trial counsel has failed to provide effective assistance of counsel. [¶] . . . [¶] . . . The defendant in *Hart* did not enter into a negotiated or stipulated plea, but rather, proceeded through a jury trial after the denial of her suppression motion. [Citation.] Hence, when deciding whether there could be a satisfactory reason for the failure of counsel to renew the suppression motion in the trial court, we considered what reasons, if any, counsel could have had under those circumstances. Our determination in *Hart* that raising the issue of ineffective assistance of counsel neutralizes the waiver applies only where the defendant proceeds through a jury trial after the denial of his suppression motion. Under such circumstances, we saw no sound tactical reason for failing to pursue a meritorious motion which, had it been properly granted, would have suppressed most of the evidence against defendant and perhaps resulted in a dismissal of the charges. [Citation. ¶] Here, however, counsel was

15

not given an opportunity to explain why the motion was not renewed, and a satisfactory explanation could exist. For instance, the availability of the plea bargain accepted by the defendant may have been dependent upon not further pursuing the suppression motion. [¶] We are wary of adjudicating claims casting aspersions on counsel when counsel is not in a position to defend his conduct. A claim of ineffective assistance of counsel instead is more appropriately made in a habeas corpus proceeding. [Citation.] Accordingly, we reject defendant's claim on appeal and leave him to that remedy." (*Hinds*, *supra*, 108 Cal.App.4th at pp. 901-902.) The court's reasoning in *Hinds* applies with equal force to the case before us.

As the United States Supreme Court has observed: "Surmounting *Strickland*'s high bar is never an easy task. [Citations.]" (*Padilla v. Kentucky* (2010) 559 U.S. 356, 371.) Defendant here has failed to meet his burden of establishing his ineffective assistance of counsel claim. (*Pope*, *supra*, 23 Cal.3d at p. 425.)[9]

---

[9] We have concluded that defendant's ineffective assistance of counsel claim fails because this is not the unusual case in which the claim can be disposed of favorably because either trial counsel has been asked to explain his or her challenged action or inaction and has failed to provide a satisfactory explanation, or that there can simply be no satisfactory explanation. (*People v. Scott*, *supra*, 15 Cal.4th at p. 1212.) In so concluding, we do not reach the question of whether defendant's challenge to his detention, patsearch, and ultimate arrest was indeed a meritorious one. Such an issue would necessarily be explored were defendant to assert an ineffective assistance of counsel claim in the context of a petition for writ of habeas corpus. (See *People v. Wilson*, *supra*, 3 Cal.4th at p. 936.)

## DISPOSITION

The order of probation is affirmed.

_____
                                        Márquez, J.

WE CONCUR:

_____
        Elia, Acting P.J.

_____
        Bamattre-Manoukian, J.

17